## THE VAN NATTA-LYNDS DRUG COMPANY V. JOSEPH GERSON.

GARNISHMENT — *No Temporary Injunction, When.* Where a plaintiff has a full and ample remedy for the protection of all his rights by garnishment proceedings, which he has already instituted in the district court against the defendant, he is not entitled, for his further protection, to a temporary injunction, either in the district or the supreme court.

### *Error from Kingman District Court.*

ON the 26th of November, 1889, and long prior to that time, George Gerson and Isaac Levy, partners under the firm-name of George Gerson & Co., were engaged in the drug business in the city of Kingman, in this state, and had been indebted to plaintiffs and other parties, on account of goods, wares and merchandise, sold and delivered to them. On the 26th day of November, George Gerson and Co. executed two promissory notes to Joseph Gerson, for the sum of $1,600 each, due and payable in three and six months, which notes, it is claimed, were partly, if not wholly, without consideration; at the same time Gerson & Co. executed and delivered to Joseph Gerson a chattel mortgage upon their entire stock of drugs, liquors, etc. This was not then filed, and no information thereof was given to the creditors or other parties. Joseph Gerson, the mortgagee, had a friend living in Newton by the

name of George W. Rogers.   He had become the owner of
two notes against Gerson & Co., one for the sum of $200, the
other for the sum of $500.   These notes were both dated in
July, 1889, the $200 note maturing in October; the other, not
due, matured November 26, 1889; each of these notes was
signed by George Gerson & Co., and payable to Joseph Ger-
son.   The $200 note Joseph Gerson had sold and indorsed
to George W. Rogers; the $500 note he had sold and indorsed
to the Citizens' Bank of Newton, of which Rogers was cash-
ier.   On November 26, 1889, and at the time the chattel
mortgage was given to Joseph Gerson, George Gerson & Co.
made a deed to all their real estate to A. Cole, of Newton, a
brother-in-law of George Gerson and the son-in-law of Jo-
seph Gerson.   A. Cole, being at Kingman with Joseph Gerson
on November 26, carried his deed to Newton without record-
ing it.   This deed, it is claimed, was wholly without consid-
eration, and in fraud of creditors.   Joseph Gerson, having
returned to Newton, on November 27 had an interview with
George W. Rogers, regarding the notes which Rogers and the
Citizens' Bank held against George Gerson & Co.; thereaf-
ter, on November 27, George W. Rogers took up from the
Citizens' Bank, as he claims, the $500 note against George
Gerson & Co., and which had matured the day before, and
thereby became, as he claims, the owner of both notes.

On December 17, 1889, Joseph Gerson and George W.
Rogers took the early morning train at Newton for Kingman,
Gerson carrying with him his chattel mortgage, and also the
deed to A. Cole, and Rogers carrying with him the two notes,
one for $200 and the other for $500, against George Gerson
& Co.; the train was a little late, and they arrived in King-
man about half-past eleven A. M.   Upon arriving at Kingman
they separated; Rogers, going to the drug store of Gerson &
Co., and seeing George Gerson, told him he wanted his money,
that he must have it right away, and could not wait any longer.
With this brief interview he departed for the hotel, where he
registered, got his dinner, etc.   As soon as Rogers was out of
the store, Joseph Gerson went in, took possession under his

chattel mortgage and locked it up, put a notice on the door that it had been closed by Joseph Gerson under a chattel mortgage, and went to the hotel for his dinner, arriving at the hotel at one o'clock, entering the dining-room just as George W. Rogers came out; George W. went to the store and found it locked, with a notice on the door that it had been closed by Joseph Gerson under a chattel mortgage. He procured an attachment, which was levied upon the entire stock of George Gerson & Co., worth about $6,500. Joseph Gerson at once began a replevin suit against the sheriff of Kingman county for the possession of the goods, claiming title under his chattel mortgage. No redelivery bond was given, and the goods were turned over to him. Plaintiff and other creditors of George Gerson & Co. then began actions against Gerson & Co., and procured orders of attachment, and caused the same to be levied upon a portion of the stock of goods of George Gerson & Co. These are the goods in controversy in this action. Plaintiff also commenced garnishment proceedings against Joseph Gerson, to which he filed his answer on December 30, 1889, admitting possession of all the goods and accounts formerly owned and held by Gerson & Co. As soon as the attachments were levied, Joseph Gerson filed motions in the district court of Kingman county, in the cases brought by plaintiff and the other creditors against George Gerson & Co., to discharge the goods from the attachments on the ground that the goods had been attached by Rogers and replevied by Gerson, and were therefore *in custodia legis*, and not subject to attachment; thereupon the plaintiff in error commenced a new action in the district court of Kingman county, in which plaintiff in error is plaintiff, and George Gerson & Co., Joseph Gerson, George W. Rogers, J. C. McClelland, sheriff of Kingman county, and the First National Bank of Kingman, and other attaching creditors of George Gerson & Co., are parties defendant. This new case sets up all the foregoing facts. The plaintiff made an application to the district judge of Kingman county for the appointment of a receiver in the action, and for a temporary injunction to restrain the sale and

disposition of the goods in question, and also to restrain and postpone any and all further proceedings upon the motion by Joseph Gerson to discharge the goods from the attachment of plaintiff. The district judge refused to appoint a receiver, and refused to grant any injunction or restraining order.

On January 7, 1890, proceedings in error were commenced in this court for the purpose of reviewing and reversing the orders of the district judge. On the same day a motion was filed in this court asking for a temporary injunction, pending the proceedings in error, to prevent any sale or disposition of the property in dispute, and also to prevent the defendants from proceeding further in their actions in the district court of Kingman county.

*Vandeveer & Martin, Hay & Hay,* and *Weir,* for plaintiff in error.

*Brown & Kline,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: Upon the application of the plaintiff for a temporary injunction to restrain the sale and disposition of the stock of goods in controversy during the pendency of the proceedings in error, this court granted a restraining order against the defendants, until it had time to examine the record and affidavits on file. The only question for us now to pass upon is, whether the restraining order heretofore granted shall be set aside, or be continued until the final hearing of the case. On account of the overburdened docket of this court, this case will not be called for hearing, in its regular order, for nearly two years. The property in dispute ought not to be tied up for so great a length of time, unless it is absolutely necessary so to do, to protect the rights of the plaintiff. The district court refused to grant a temporary injunction.

A temporary injunction is not a matter of strict right; its issue rests with the sound discretion of the judge. If the rights of a plaintiff are not prejudiced by a refusal of the temporary injunction, it ought to be denied. (*Akin v. Davis,*

14 Kas. 143; *Conley v. Fleming,* 14 id. 381; *Olmstead v. Koester,* 14 id. 463.)

It was said in *Wood v. Millspaugh,* 15 Kas. 14, that—

"The district courts, and the judges thereof, have considerable discretion in allowing and disallowing, and in sustaining or vacating temporary injunctions; and therefore, when the reasons urged for and against a temporary injunction are very nearly equally balanced, the supreme court will not reverse an order of the district court, or a judge thereof, vacating a temporary injunction."

If the plaintiff has not a full and complete remedy without the appointment of a receiver, or the granting of the temporary injunction in the action brought by him against Joseph Gerson and others to attack their collusive proceedings in placing the goods in dispute *in custodia legis,* to defraud the creditors of Gerson & Co., then, we think, he has a sufficient remedy against Joseph Gerson under the garnishment proceedings already instituted. In this connection it is pertinent to state that the petition of the plaintiff alleges that Joseph Gerson "is quite wealthy, and the possessor and owner of large and valuable properties, both real and personal." The plaintiff's claim against George Gerson & Co. is only $400, with interest. Therefore it is clearly evident, from the showing made by plaintiff, that Joseph Gerson is amply able to respond to any judgment that the plaintiff may be entitled to recover.

The statute provides that—

"From the time of the service of the summons upon the garnishee he shall stand liable to the plaintiff to the amount of the property, moneys, credits and effects in his possession or under his control, belonging to the defendant or in which he shall be interested, to the extent of his right or interest therein, and of all debts due or to become due to the defendant, except such as may be by law exempt from execution. Any property, moneys, credits and effects held by a conveyance or title, void as to the creditors of the defendant, shall be embraced in such liability." (Gen. Stat. of 1889, ¶ 4296.)

The statute further provides that—

"The proceedings against a garnishee shall be deemed an

action by the plaintiff against the garnishee and defendant, as parties defendant, and all the provisions for enforcing judgments shall be applicable thereto; but when the garnishment is not in aid of an execution, no trial shall be had of the garnishee action until the plaintiff shall have judgment in the principal action, and if the defendant have judgment, the garnishee action shall be dismissed with costs." (Gen. Stat. of 1889, ¶ 4293.)

On the part of the plaintiff it is claimed, however, that as George W. Rogers and J. C. McClelland (the sheriff of Kingman county) are not parties in the garnishment proceedings against Joseph Gerson, a full investigation of the collusive proceedings of Joseph Gerson with the other parties cannot be had. It appears from the record and affidavits submitted, that Joseph Gerson was the moving party in the alleged fraudulent proceedings. He has all of the property in his possession. He is charged with fraudulent practices in attempting to hold it under the forms of law, to hinder, delay and defraud the creditors of George Gerson & Co. In such a case, the courts will investigate very fully the conduct and acts of the party attempting to consummate the fraud, and we perceive no difficulty whatever in fully protecting the rights of the plaintiff in the garnishment action. If Joseph Gerson's chattel mortgage was executed without consideration, it can be shown in the garnishment proceedings; therefore, if his chattel mortgage is void as to creditors, it will not protect him. Neither George W. Rogers nor J. C. McClelland, the sheriff, has the possession of the property sought to be appropriated to the payment of plaintiff's claim. The pendency of the proceedings in error in this case will not prevent the prosecution of the action of plaintiff against Gerson & Co., Joseph Gerson, and others, in the district court, nor will the proceedings in error prevent the prosecution of the garnishment action brought by plaintiff. If the attachment proceedings of plaintiff against Gerson & Co. were prematurely brought, of course plaintiff can, if he so desires, obtain a new order of attachment.

The restraining order will be set aside, at the cost of the plaintiff. A temporary injunction will be refused.

All the Justices concurring.